UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORMFACTOR, INC, <br><br> Plaintiff, <br><br> v. <br><br> MICRO-PROBE, INC., et al., <br><br> Defendants. | Case No. C-10-03095 PJH (JCS) <br><br> **ORDER REGARDING JOINT LETTER BRIEF [Docket No. 132]** |

## I. INTRODUCTION

On April 6, 2012, Plaintiff FormFactor, Inc. ("Plaintiff") and Defendants Micro-Probe, Inc. and David Browne ("Defendants") filed a Joint Letter Brief (the "Letter") addressing the parties' discovery dispute. Specifically, Defendants' contend that Plaintiff has not complied with this Court's March 2, 2012 discovery order, and has also failed to respond in good faith to Defendant Micro-Probe's discovery requests. Letter, 1. Plaintiff insists it has fully complied with this Court's orders. *Id.* at 2-5. On April 27, 2012, at 9:00 a.m., a hearing was held. For the reasons stated below, (1) Defendants' Motion for Sanctions is GRANTED in part and DENIED in part, and (2) Defendants' Motion to Compel is GRANTED in part and DENIED in part.

## II. BACKGROUND

Following a hearing, this Court issued an order on March 2, 2012, in which the Court directed the parties, in relevant part, as follows:

> Joint Letter re: Trade Secrets (docket no. 97) : Plaintiff shall answer an Interrogatory identifying all trade secrets at issue in this case and may do so by reproducing in the Interrogatory answer or as an exhibit to the Interrogatory answer the list that was produced as part of the initial disclosures. The Plaintiff shall sit for a 30 (b)(6) deposition, not to exceed ten (10) hours on March 22 and 23, 2012, and the witness shall be prepared to testify regarding why each document on the list is a trade secret, and what specific content within each document entitles it to trade secret protection.
>
> Joint Letter re: Qualified designee (docket no. 98): Plaintiff shall sit for a 30(b)(6) deposition only as to topic #30 regarding storage systems and searches undertaken to respond to Micro-Probe's document requests.

> Joint Letter re: Motion to Compel RFP 244, and 246 (docket no. 106): Document #244 - Micro-Probe shall produce, within the scope of the documents they have already produced, documents that were created or found since the last production.
>
> Document #246: Micro-Probe shall respond to an interrogatory by identifying all search terms used by Data Resources to find documents for production in this case.
>
> The Stipulated Protective Order, entered on 11/22/10, docket no. 44, is modified as follows: § 7.3 (e) is deleted. Documents redacted for confidential information in the last round of discovery by Micro-Probe shall be produced under the Protective Order as modified, without redactions by 3/23/12, except with respect to delay of Intel information as previously agreed to by FormFactor.

Minute Order, Dkt. No. 108.

On March 13, 2012 the Court ordered, *inter alia*, that Plaintiff admit or deny Defendant Micro-Probe's Request for Admission Nos. 1 and 2, and that Plaintiff produce documents responsive to Defendant's Request for Production No. 188, to the extent they exist. *See* Order Re Joint Letter Regarding Micro-Probe's Motion to Compel, Dkt. No. 111.

## III. ANALYSIS

### A. Legal Standard

#### 1. Court's Power to Impose Sanctions Under Rule 37

Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions—including preclusion sanctions—where a party has violated a discovery order. Fed. R. Civ. P. 37(b). In particular, Rule 37(b)(2) provides, in relevant part, as follows:

> Sanctions in the District Where the Action Is Pending.
>
> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>>
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>>
>> (iii) striking pleadings in whole or in part;
>>
>> (iv) staying further proceedings until the order is obeyed;
>>
>> (v) dismissing the action or proceeding in whole or in part;
>>
>> (vi) rendering a default judgment against the disobedient party; or

>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> . . .
>
> (C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2). Courts have held under Rule 37(b) that "[e]videntiary preclusion is a harsh sanction that generally is not imposed where the failure to provide discovery was either substantially justified or harmless." *Rooney v. Sierra Pacific Windows*, 2011 WL 2149097, at * 3 (N.D. Cal., June 1, 2011) (Koh, J.).

Sanctions are also available under subsection (c)(1) for failure to provide information or identify a witness as required by Rule 26(a) or (e). Fed. R. Civ. P. 37(c)(1). If such a failure occurs, the violating party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* The rule also states that "in addition to or instead of this sanction," the court may order payment of reasonable expenses, including attorney's fees caused by the failure, and may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi). The burden is upon the disclosing party to show that the failure to disclose information or witnesses was justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

Furthermore, under Rule 37(d)(1)(A)(i), sanctions are available when the failure to produce an adequately prepared witness pursuant to Rule 30(b)(6) is tantamount to a failure to appear. *See JSR Micro, Inc. v. QBE Ins. Corp.*, 2010 WL 1957465, at *2 (N.D. Cal., May 14, 2010) (LaPorte, J.) (citing *Coryn Group v. O.C. Seacrets*, 265 F.R.D. 235, 239-40 (D.Md. 2010)). In sanctioning a party for a 37(d)(1)(A)(i) violation, "sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(d)(3). "Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* Sanctions that prohibit a party from introducing evidence "are typically reserved only for flagrant discovery abuses." *Great*

*Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 543 (D. Nev. 2008) (citing *Bank of N.Y. v. Meridien BIAO Bank Tanz. Ltd.*, 171 F.R.D. 135, 151-52 (S.D.N.Y. 1997)).

Finally, Rule 37 provides that, where a motion to compel is granted the court "must" require the attorney or client "whose conduct necessitated the motion" to pay the attorneys' fees and other expenses incurred in making the motion. Fed. R. Civ. P. 37(a)(5)(A). The only exceptions are where there was no good faith attempt to resolve the motion, where the objections or non-disclosure were substantially justified, or where other circumstances would make an award unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

### 2. Court's Power to Compel Document Production

Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery of any nonprivileged matter that is relevant to any party's claims or defenses, or "for good cause," discovery of any matter relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* District courts have broad discretion in resolving whether the information sought is relevant for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). While the Federal Rules of Civil Procedure allow for liberal discovery, a party is not entitled to pursue requests if they are not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

A party may make a motion for an order to compel a disclosure pursuant to Fed. R. Civ. P. 37(a)(1). "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1) The Federal Rules provide that an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond. Fed. R. Civ. P. 37(a)(3).

### B. Whether Plaintiff Produced an Adequate Rule 30(b)(6) Witness[1]

Defendants challenge the adequacy of Plaintiff's Rule 30(b)(6) witness, Mr. Eldridge, with respect to three topics of the deposition: (1) public disclosure of documents; (2) protected content of documents; and (3) document production. The Court finds that preclusion sanctions are warranted under Rule 37(b) because the Court's March 2, 2012 discovery order required Plaintiff to prepare its Rule 30(b)(6) witness to answer questions related to public disclosure of documents, and Plaintiff's witness was inadequately prepared. Regarding the second and third challenged topics, the Court finds that Plaintiff's witness was adequately prepared to answer questions on those topics and therefore Plaintiff is in compliance with those aspects of the Court's order

#### 1. Public Disclosure of Documents

This Court's March 2, 2012 order required Plaintiff to present a Rule 30(b)(6) witness that is "prepared to testify regarding why each document on the list is a trade secret, and what specific content within each document entitles it to trade secret protection." Minute Order, Dkt. No. 108. Plaintiff's attempt to characterize the Court's order as unspecific and ambiguous as to the topic of public disclosure is disingenuous and entirely rejected by the Court. This Court explicitly stated at the March 2, 2012 hearing that the topic of public disclosure of any claimed confidential information was "part and parcel" of the umbrella topic of why specific documents were entitled to trade secret protection.[2] Transcript of Proceedings Held on March 2, 2012 ("March 2 Transcript"), Dkt. No.

---

[1] Plaintiff argues that the Court should not be addressing this discovery because Defendant has failed to follow the proper procedures laid out by the Court in its February 1, 2011 order. Letter at 6-7 (citing Dkt. No. 65). Although the parties did not meet and confer in person regarding the dispute prior to filing the letter, the Court finds that Defendant, given the discovery deadline of April 7, substantially complied with the in-person meet and confer requirement when Defense counsel, Mr. Yankwich, requested an in-person meeting on April 5 and appeared in person at opposing counsel's, Mr. Robinson's, office the same day. *Id.* at 1. Mr. Yanwich states he stayed at the office until closing, but Mr. Robinson never came out to meet him. *Id.* Additionally, Plaintiff admits that Defendant contacted him on March 28 to set up a time to discuss a discovery letter, thus satisfying the Court's requirement to attempt to resolve the dispute short of an in-person meeting. Letter at 6. Plaintiff did not respond until April 4 due to Mr. Robinson's illness. *Id.* The Court finds that this dispute is appropriate for determination on the merits at this time.

[2] The Court does not doubt Plaintiff's awareness of the importance of public disclosure to the viability of trade secrets. This Court recently noted that "[p]ublic disclosure (absence of secrecy) is fatal to the existence of a trade secret." *Apple Inc. v. Psystar Corp.*, 2012 WL 10852, *1 (N.D. Cal. Jan. 3, 2012) (Alsup, J.) (citing *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.")). The fact that this Court did not spell out the elements of a trade secret in its order does not entitle Plaintiff

5

110, 33: 15-23. Plaintiff counsel's suggestion at the hearing that the Rule 30(b)(6) witness may 1) answer "I don't know" when asked whether a particular document has been publicly disclosed, and 2) that Plaintiff was not required to do an investigation, was rejected by the Court:

> **The Court:** You have to do an investigation, but it's only an internal investigation.
>
> **William J. Robinson [Plaintiff's Counsel]:** Of course
>
> **The Court:** You don't have to go out to the internet and see what's out there and that sort of thing. You have to do what's reasonably available to your client and the most pertinent part is stuff that [Defendants] can't get at, right, it is the stuff that you know internally.
>
> So if there is a group of people who, for example, have command of these kinds of documents, he has to go ask them, you know, was there ever disclosure of this kind much [sic] document or that kind of document and have them do that investigation, but they—he has to do a reasonable investigation, but that's all part of the 30(b)(6) process.

*Id.* at 33:24-34:24.

Additionally, Plaintiff's argument that the Rule 30(b)(6) witness was not ordered to be prepared to testify to the public disclosure of each particular document is directly contrary to this Court's order. As noted above, this Court ordered that the Rule 30(b)(6) witness be prepared to testify regarding "why *each document* on the list is a trade secret, and what specific content within *each document* entitles it to trade secret protection." Minute Order, Dkt. No. 108. Indeed, the basis for the Court's order requiring a new Rule 30(b)(6) deposition was Mr. Eldridge's inadequate preparation as to each particular document at his earlier Rule 30(b)(6) deposition. This Court explained thoroughly at the March 2 hearing what it found deficient in Mr. Eldridge's deposition testimony and what it was ordering for the new deposition:

> **The Court:** [Mr. Eldridge] wasn't prepared. There is no evidence to me that he was prepared to go document-by-document and do it. So one way or another you're going to have to figure out a way to do that.

March 2 Transcript, 7:6-9.

> **The Court:** I'm going to demand that you say chapter and verse *for each particular document* why [the Plaintiff believes the content is a trade secret]. Not generically. That's what I'm going to do.

*Id.* at 14:16-18 (emphasis added).

> **Mr. Robinson:** The company's position is that everything about all documents are trade secrets . . . . Every time [Mr. Eldridge is] going to be shown a document, he's going to say,

---

to ignore the order's clear directives and its logical implications.

6

1      "It's a trade secret because it's FormFactor research. It's about our customers. It was
2      compiled. It had been the subject of secrecy efforts and we don't let anything outside this
    company except what's filed in a U.S. patent." And so –

3      **The Court:** Well, but that doesn't end the inquiry as to whether it is legitimately kept as a
4      trade secret. Just because you treat it as a secret, you protect it as a secret, you think it's a
    secret, you have to identify the specific content and why in the world it would be secret. And
5      so you're going to have to do that *for each document*.

6 *Id.* at 16:13-17:7 (emphasis added).

7     Plaintiff's insistence that Eldridge's failure to do a reasonable investigation into the public

8 disclosure of the contents of each document is excused because such an investigation "was not

9 necessary," Letter at 4, completely disregards this Court's clear directives. Plaintiff does not dispute

10 that Eldridge failed to reasonably investigate whether the contents of each document has been

11 publicly disclosed; indeed, Eldridge was asked repeatedly during his March 22 and 23 deposition

12 testimony whether he initiated such an investigation, and he answered in the negative. *See, e.g.*,

13 Letter, Ex. 3 (March 22 Eldridge Deposition), 598:18-25; *Id.*, Ex. 4 (March 23 Eldridge Deposition),

14 742:2-743:17. Because Eldridge did not commence a reasonable investigation regarding public

15 disclosure, Eldridge was not prepared to testify as to the trade secrets at issue—a violation of the

16 Court's March 2 order.

17     The Court finds that, commensurate with its powers under Rule 37, Plaintiff shall be

18 precluded from offering any evidence it hasn't already disclosed to Defendants regarding whether

19 the contents of each document claimed to be a trade secret has been publicly disclosed. *See* Fed. R.

20 Civ. P. 37(b)(2)(A)(ii). Plaintiff is limited to what it has already produced, which includes

21 documents produced, deposition testimony and declarations attesting to its safeguarding procedures.

22 Additionally, Plaintiff is ordered to pay Defendants' reasonable expenses, including attorney's fees,

23 caused by Plaintiff's violation. *See* Fed. R. Civ. P. 37(b)(2)(C). Under the circumstances described

24 above—where Plaintiff provides no colorable justification for disobeying the Court's order, nor any

25 reason for the Court to believe that Plaintiff's violation was harmless—such evidentiary sanctions

26 are warranted. *See Rooney*, 2011 WL 2149097, at * 3.

27         **2.**     **Protected Content of Documents**

28     Defendants contend that Eldridge was inadequately prepared to testify to what specific

content in each document entitles it to trade secret protection and why. Defendants reason that

7

1  because Eldridge did not review this Court's March 2 order, the March 2 transcript, the March 21
2  trade secret listing, and the March 23 supplemental listing, he was unprepared for his deposition.
3  Furthermore, Defendants insist that he was unprepared because he could not identify and discuss the
4  trade secrets without viewing the underlying documents, rather than just examining the index list.
5  Finally, Defendants assert that Eldridge's inadequacy was reflected in his repeated answer that a
6  document was "presumably" a trade secret because it was marked confidential.

7      The Court rejects Defendants' contentions and finds that Eldridge was adequately prepared
8  to testify to the topic of protected content of documents. Eldridge was not necessarily required to
9  review the orders of this Court or the trade secret listing in order to be adequately prepared to testify
10 on this topic. Moreover, Eldridge was not required to be able to identify trade secrets solely from
11 the index list, rather than from looking at the available underlying documents. Instead, as discussed
12 above, Eldridge was required to be prepared to testify to what specific content in each document
13 entitles it to trade secret protection and why. A review of Eldridge's March 22 and 23 deposition
14 reveals that he was adequately prepared. Although Eldridge did state multiple times that he
15 "presumed" the content in a document was a trade secret since it was marked confidential, he would
16 go on to elaborate, in addition to the confidential marking, what specific content would be protected
17 and why. *See, e.g.*, March 22 Eldridge Deposition, 530:8-531:17, 553:8-554:13, 563:24-564:14,
18 600:25-602:6, 664:9-21.

19     **3.    Document Production**

20     Defendants contend that Eldridge's testimony was deficient in regards to the topic of
21 document production. While the Court finds that answers to discrete questions posed to Eldridge
22 shall be answered, the Court does not find Eldridge so unprepared as to warrant sanctions or further
23 depositions.

24     The March 2 order required Plaintiff to "sit for a 30(b)(6) deposition only as to topic #30
25 regarding storage systems and searches undertaken to respond to Micro-Probe's document requests."
26 Minute Order, Dkt. No. 108. Plaintiff produced Eldridge to testify on this topic on March 23, 2012.
27 At that time, Eldridge supplied a 21-point list that indicated generally where and how searches were
28 made. Eldridge's testimony concerning this list, however, was less than complete in three key areas.
Eldridge was not knowledgeable on the names of people interviewed or whose email was searched,

8

what key word searches were used, and whether any of the searches in the 21-point listed were applied to Defendants' January 2012 set of document requests.[3] *See, e.g.*, March 23 Eldridge Deposition, 687:23-688:10; 688:13-15; 714. Defendants' arguments that Eldridge's testimony was further deficient because he did not know what specific searches were conducted to respond to a specific document request is rejected by the Court. The Court's March 2 order cannot be read reasonably to require that level of specificity.

The Court orders that Plaintiff shall state, in writing, **within ten days** of the date of this order, under oath : 1) the names of individuals interviewed (No. 6 on Plaintiff's search list), 2) the names of individuals whose email was searched (Nos. 9 and 10 on Plaintiff's search list), 3) what search terms were used for all of Plaintiff's electronic searches,[4] and 4) what storage systems and searches were undertaken to respond to Defendants' January 2012 set of document requests.

### C. Whether Plaintiff Has Produced Documents

Micro-Probe contends that Plaintiff has not produced any documents responsive to document request 188, and has not produced "all responsive documents," including documents related to Micro-Probe's January 2012 set of RFPs and its continuing duty to supplement its previous responses. Micro-Probe seeks an order compelling production of the above documents. Regarding

---

[3] Plaintiff's assertion that Eldridge testified that the searching was the same for each request for production is incorrect. Eldridge, in fact, repeatedly testified that, to his knowledge, "the vast majority" of the searches took place before his initial deposition in the fall and that he doesn't "know if any additional searching was done after [his initial deposition] in response to some additional request." March 23 Eldridge Depo., 686:3-12.

[4] To the extent Plaintiff argues that disclosure of search terms would reveal privileged information, the Court rejects that argument. Such information is not subject to any work product protection because it goes to the underlying facts of what documents are responsive to Defendants' document request, rather than the thought processes of Plaintiff's counsel. *See Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109-10 (E.D. Pa. 2010) (finding that document production information, including search terms, did not fall under work product protection because such information related to facts) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981) ("Protection of the privilege extends only to communications and not to facts. The fact is one thing and a communication concerning that fact is entirely different.")); *see also Doe v. District of Columbia*, 230 F.R.D. 47, 55-56 (D.D.C. 2005) (holding that Rule 26(b)(1) of the Federal Rules of Civil Procedure can be read to allow for discovery of document production policies and procedures and such information is not protected under the work product doctrine or attorney-client privilege). Moreover, Defendants' substantial need for this information is apparent. *See In re Enforcement of Subpoena Issued by F.D.I.C.*, 2011 WL 2559546, at *1 (N.D. Cal. June 28, 2011) (LaPorte, J.) ("Fact work product consists of factual material and is subject to a qualified protection that a showing of substantial need can overcome."). There is simply no way to determine whether Plaintiff did an adequate search without production of the search terms used.

document request 188, on March 13, 2012, this Court ordered that Plaintiff produce documents responsive to Defendant's RFP No. 188, to the extent they exist. *See* Order Re Joint Letter Regarding Micro-Probe's Motion to Compel, Dkt. No. 111. At the hearing on April 27, 2012, Plaintiff's counsel stated that Plaintiff produced all documents responsive to the request. Counsel has also submitted a declaration testifying to Plaintiff's full compliance with document request 188. *See* Declaration of William J. Robinson Re Compliance of Order Regarding Motion to Compel ("Robinson Decl."), Dkt. No. 160. The Robinson Declaration satisfies the Court that Plaintiff has complied with document request 188. Although Defendants insist the production is incomplete, Defendants' suspicions, as discussed below, are insufficient to warrant an order compelling production.

Regarding Plaintiff's alleged failure to produce other documents, the Court finds that Micro-Probe has not made a sufficient showing that responsive documents were withheld or that its objections were not well taken. Micro-Probe states it has "grave doubts" that Plaintiff has failed to produce all responsive documents because Eldridge was not aware of any document searches after his initial deposition and because Plaintiff's document production was low relative to Micro-Probe's. These facts alone, however, do not provide a colorable basis for Micro-Probe's belief that relevant, responsive documents exist and are being withheld. *See MGA Entm't, Inc. v. Nat'l Prods. Ltd*, 2011 WL 4550287, at *2 (C.D. Cal. Oct. 3, 2011) (citing, *inter alia*, *Bethea v. Comcast*, 218 F.R.D. 328, 330 (D.D.C. 2003) (holding that a party's suspicion that another party has failed to respond to document requests does not justify compelled inspection)). Moreover, Micro-Probe has not made a showing of what specific documents have been withheld and why those documents are relevant to its defense of this case. This Court accordingly denies Micro-Probe's motion to compel as to these other documents. The parties are ordered to meet and confer in person **within five days** of the date of this order on this issue.

**D. Whether Plaintiff Failed to Timely Respond to Micro-Probe's Interrogatories**

Micro-Probe contends that Plaintiff failed to timely respond to Micro-Probe's Interrogatories Nos. 17 and 18, which followed Plaintiff's denial of Micro-Probe's Request for Admission Nos. 1 and 2. Micro-Probe maintains that the response was due on March 26, but Plaintiff submitted it one day late, on March 27. The Court, Micro-Probe proposes, should order Plaintiff's objection to those

1  interrogatories waived and that Plaintiff may offer no evidence to support its denials of the request
2  for admission.  Plaintiff argues that no response was needed to Interrogatories Nos. 17 and 18
3  because Micro-Probe had served more than its allotted 25 interrogatories without a court order
4  allowing more.

5        The Court cannot rule on this issue because neither side has submitted the full set of Micro-
6  Probe's interrogatories, which is necessary for the Court to determine whether the number of
7  interrogatories exceeds 25.  Furthermore, Micro-Probe provides no indication why the responses to
8  the interrogatories were due on March 26.  Finally, the Court notes that Rule 33 explicitly limits a
9  party to serving 25 interrogatories, including discrete subparts, on another party.  *See* Fed. R. Civ. P.
10 33(a)(1).  Micro-Probe has not sought leave of court to serve additional interrogatories.  If
11 Interrogatories 17 and 18 in fact exceeded the 25 interrogatories Micro-Probe was allowed, then
12 Micro-Probe had no authority to serve Interrogatories 17 and 18, and Plaintiff was not required to
13 respond to them.  *See Masterson v. Huerta-Garcia*, 2010 WL 4053924, at *9 (E.D. Cal. Sept. 30,
14 2010) (refusing to compel responses to interrogatories that exceeded the 25 allotted under the federal
15 rules); *Jovanovich v. Redden Marine Supply, Inc.*, 2011 WL 4459171, at *3 (W.D. Wash. Sept. 26,
16 2011) ("Plaintiffs are not required to respond interrogatories [that exceed the limit].  Further,
17 Defendant may not serve additional interrogatories without Plaintiffs' agreement or leave of the
18 Court.").  Under such circumstances, the Court would not fault a party for an untimely objection to
19 an interrogatory that should not have been served in the first place.

20       **E.**    **Whether Plaintiff Is Required to Produce Its Listing of Trade Secrets in Native Excel Format**

22       The Court finds that Plaintiff was not required to produce its list of trade secrets in Excel
23 format and therefore refuses to compel Plaintiff to do so and denies Micro-Probe's request for
24 sanctions.  Plaintiff insists that it cannot meet Micro-Probe's demand because there is no native
25 Excel format for the list, even if its production in such format was required.  Micro-Probe provides
26 no indication why it believes a native Excel format exists.  The Court cannot compel the production
27 of a document that does not exist.  Moreover, the basis for Micro-Probe's assertion that Plaintiff
28 must provide the list in Excel is the parties' Stipulation re: Production Format, which Micro-Probe
misapplies to the trade secrets list.  The Stipulation relates only to production of "ESI and other

1 collected documents." Letter at 5. The trade secrets list, however, was provided in response to an
2 interrogatory and therefore does not fall under the Stipulation.

### F. Whether Plaintiff's Supplemental Initial Disclosures Should be Stricken

"Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures 'in a timely manner' when the prior response is 'incomplete or inaccurate.'" *Hoffman v. Constr. Prot. Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (quoting Fed. R. Civ. P. 26(e)(1)(A)). The Court declines to grant Micro-Probe's request to strike Plaintiff's allegedly untimely supplemented disclosures. Although served on the day discovery cut-off, Micro-Probe does not otherwise indicate why the supplementation was not timely. Meanwhile, Plaintiff contends its supplemental disclosure was timely given that it "was made within a day of the clarification of the role of the witness." Letter at 10. The Court's refusal to grant sanctions based on Micro-Probe's present showing is without prejudice to file a renewed motion for sanctions at trial.

### IV. ATTORNEY FEES AND COSTS

Rule 37(a) provides that where a motion to compel is granted, attorney fees and expenses must be awarded to the prevailing party unless there was no good faith effort to resolve the motion, the non-disclosure was substantially justified, or other circumstances make an award of expenses otherwise unjust. Fed. R. Civ. P. 37(a)(5). None of the exceptions apply here. Additionally, Rule 37(b) requires a disobedient party to pay the reasonable expenses, including attorney fees, caused by the violation of the order. *See* Fed. R. Civ. P. 37(b)(2)(C). Plaintiff shall pay the reasonable attorney fees and costs incurred in preparation of the Letter or otherwise caused by Plaintiff's violation of the Court's order. By **May 4, 2012**, Defendants shall file a declaration detailing the reasonable costs incurred. Papers challenging the reasonableness of these fees may be filed by **May 11, 2012**.

12

**V.    CONCLUSION**

For the reasons stated above, (1) Defendants' Motion for Sanctions is GRANTED in part and DENIED in part, and (2) Defendants' Motion to Compel is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated: May 3, 2012

_____
JOSEPH C. SPERO
United States Magistrate Judge